UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. Action No. 10-51-1, -2, -4 (RMC) |
| | ) | |
| MARK ANTHONY PRAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON MOTION TO COMPEL DISCOVERY**

Defendants Mark Pray, Kenneth Benbow, and Alonzo Marlow[1] have been indicted by a Grand Jury, along with co-defendants who are not parties to the instant motion to compel, on narcotics charges, murder charges in aid of racketeering, maintaining a continuing criminal enterprise, and operating a Racketeer Influenced and Corrupt Organization (RICO), in violation of federal and local criminal statutes. Because of the nature of the charges, each is potentially eligible for the death penalty and is facing the death penalty authorization process at the Department of Justice ("DOJ"). The United States Attorney has not yet made any recommendation regarding seeking the death penalty and the Attorney General has not yet made any decision. Messrs. Pray, Benbow, and Marlow jointly move to compel pre-authorization disclosure of certain exculpatory evidence — in sufficient time for them to use it before DOJ to argue against the prosecutor's seeking the death penalty in this case. As a result of further disclosures by the government since the motion was filed, the Defendants now limit their motion, seeking only "disclosure of individuals who are

---

[1] For convenience, this Opinion refers to Messrs. Pray, Benbow, and Marlow as "Defendants," although they are not the only defendants charged in the Superseding Indictment in this case. *See* Superseding Indictment [Dkt. # 88].

equally culpable in the charged murders but will not face the death penalty" and disclosure of "a summary of issues which impair [government] witnesses' credibility." Defs.' Reply [Dkt. # 127] at 1, 8.[2]

The Court recognizes the grave situation in which Defendants find themselves and that the information they seek could possibly help them make mitigating arguments against authorization of the death penalty. However much these circumstances might counsel such an order in a different case, a point the Court does not reach, no such order is appropriate in this one. Defendants Pray and Alonzo are charged, *inter alia*, with the murder of Crystal Washington in order to prevent her from testifying against Mr. Pray. The possibility of violent action against a potential witness — cooperator or not — cannot be ignored. The Court finds the risks to the lives of others too real to be overcome by Defendants' request. The motion to compel will be denied.

## I.  FACTS

The Defendants are charged in a Superseding Indictment with murders in aid of racketeering, *i.e.*, death-eligible offenses: Counts Four and Five allege that on September 24, 2008, Mr. Pray and Mr. Benbow murdered Van Johnson, Jr., and attempted to murder Steven Robinson; Count Six alleges that on April 10, 2009, Mr. Pray and Mr. Marlow murdered Crystal Washington; and Count Eight alleges that on January 13, 2010, Mr. Pray and Mr. Marlow murdered Jheryl Hodge. *See* Superseding Indictment, Counts 4-6 & 8, at 37–40.

The government is in the midst of considering whether to seek the death penalty against one or more of these Defendants. That process is commonly referred to as the Death Penalty

---

[2] The Defendants drop their request for evidence suggesting that Mr. Pray was not involved in the murder of Stanley Marsh, as the government has represented that it has no such exculpatory information in its possession regarding this uncharged murder.

Protocol in the U.S. Attorney's Manual ("USAM"). Under the Protocol, the United States Attorney for the District of Columbia will submit a recommendation to the Assistant Attorney General for the Criminal Division, after giving counsel for each Defendant "a reasonable opportunity to present any facts, including any mitigating factors, for the consideration of the United States Attorney." USAM § 9-10.050. Any materials from defense counsel will be forwarded to DOJ with the U.S. Attorney's submission. Within DOJ, the Attorney General's Review Committee on Capital Cases will review the submission and, if either the United States Attorney recommends seeking a death sentence or a member of the Capital Review Committee requests a conference, defense counsel will be provided an opportunity "to present evidence and argument in mitigation." USAM § 9-10.120. The Capital Review Committee will make a recommendation to the Deputy Attorney General, and the Deputy Attorney General then will make a recommendation to the Attorney General. *Id*. The Attorney General alone will decide whether to seek the death penalty. *Id*.

Pursuant to the Protocol, counsel for Mr. Pray and Mr. Benbow made presentations to the United States Attorney for the District of Columbia on January 31, 2011. Mr. Marlow's presentation is currently scheduled for February 28, 2011. Prior to those meetings, the government had produced substantial amounts of discovery to the Defendants:

> First, the United States has made seven (7) separate productions of discovery in this case. These productions have included approximately 13,800 pages' worth of the court documents relating to Title III and search warrant authorizations, investigative case files, historical arrests, telephone records, surveillance and crime scene reports and photographs, and specific discovery relating to each of the three murders charged in the superseding indictment, including autopsy reports, crime scene reports, and crime scene photographs. The discovery also includes the line sheets and audio recordings from the extensive Title III surveillance in this case, and 51 discs containing all consensually-recorded telephone calls, undercover

>videos of controlled purchases of narcotics, and video surveillance by law enforcement agents. The discovery has been produced electronically and in an organized fashion, with a detailed index, to facilitate counsel's review of the material.
>
>Second, the government, on or about December 23, 2010, prepared a separate written response to a defense letter seeking twenty-three (23) separate categories or types of "discovery materials or information relevant to the government's determination as to whether to seek the death penalty." . . .
>
>Finally, on or about January 14, 2011, the government sent all defense counsel a ten-page letter containing summaries of witness statements and other information favorable to the defense. . . . The disclosures set forth in this letter include discrepancies in eyewitness accounts, varying descriptions of perpetrators, information that others may have committed the offenses, and other information which may undercut the government's theory at trial. These disclosures, which represent the universe of non-impeachment *Brady*[3] material respecting the charged murders presently in the government's possession were made over ten months before the "Group 1"[4] trial date of October 31, 2011, and before any trial date has been set for the death-eligible defendants.

Gov't Opp'n [Dkt. # 125] at 4–5.

## II. ANALYSIS

Both sides to this dispute agree that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87. *Brady* requires the disclosure of exculpatory evidence that is material to a defense or punishment. *Giglio v. United States*, 405 U.S. 150 (1972), extends *Brady*, requiring the

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] The Group 1 defendants are Robert McMillan, Robert Smith, Charles Wade, and Larry Williams.

disclosure of material impeachment evidence. Some courts have held that "in a death penalty prosecution, the *Brady* obligation requires the Government to disclose material information that exculpates the defendant of the crime and that would be material to the defendant's presentation of factors mitigating against a sentence of death." *United States v. Frank*, 11 F. Supp. 2d 322, 327 (S.D.N.Y. 1998).

The immediate disagreement arises because Defendants want specific information now, while the government argues that their request is premature and that defense rights to information under *Brady* are tied to trial, not the Protocol. *See* Gov't Opp'n at 7 ("*Brady* and its progeny delineate the accused's right to the disclosure of evidence favorable to guilt or punishment. This constitutional principle, however, is a trial right."). The government also expresses grave concerns for the safety of its witnesses. Defendants acknowledge this risk. Defs.' Mot. to Compel Pre-Authorization Disclosure [Dkt. # 115] at 17 (recognizing that at least one of the requests "implicates issues of witness security").

The Protocol does not create substantive or procedural rights for a defendant. *United States v. Feliciano*, 998 F. Supp. 166, 169 (D. Conn. 1998). "[T]he decision to seek the death penalty . . . is a matter of prosecutorial discretion. The Protocol did not create any individual right or entitlement subject to the due process protections applicable to an adjudicative or quasi-adjudicative governmental action." *United States v. McVeigh*, 944 F. Supp. 1478, 1483 (D. Colo. 1996); *accord United States v. Bodkins*, Crim. No. 4:04-700083, 2004 WL 2491615, at *3 (W.D. Va. Nov. 5, 2004) (the USAM does not create discovery rights for a defendant); *United States v. Shakir*, 113 F. Supp. 2d 1182, 1187-88 (M.D. Tenn. 2000) (the Protocol does not create any enforceable substantive or procedural rights for defendants; the prosecutor's decision not to provide

pre-authorization discovery is a matter of discretion that is not reviewable by the court).

Defendants, however, do not rely on the Protocol as a basis for their discovery requests; instead, they cite *Brady*. There are cases in which similar requests by death-eligible defendants have been granted. In *United States v. Delatorre*, 438 F. Supp. 2d 892 (N.D. Ill. 2006), for example, the court ordered pre-authorization discovery, requiring the government to "produce mitigating and aggravating factors and other *Brady* material . . . so that it may be used in defense counsels' arguments against pursuit of the death penalty to both the United States Attorney and the Department of Justice" 438 F. Supp. 2d at 903. Even so, the court carved out certain exceptions to disclosure — it did not require the government to produce *Brady* material related to witnesses at risk, the identification of prosecution witnesses, or privileged materials. *Id.* at 902.

Some of the decisions that Defendants rely upon are based on local standing orders requiring disclosure. In *United States v. Feliciano*, 998 F. Supp. 2d 166, for instance, the district court ordered the production of some, but not all, of the requested pre-authorization discovery. However, the court based its ruling on a Standing Order in the District of Connecticut which "requires disclosure by the government within ten (10) days from the date of arraignment in *all* criminal cases of '[a]ll information known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of *Brady* . . . .'" 998 F. Supp. 2d at 170; *see also United States v. Perez*, 222 F. Supp. 2d 164, 171 & 171 n.14 (D. Conn. 2002) (ordering pre-authorization discovery, with exceptions, in reliance on Standing Order and based on the court's inherent power to manage its docket, and specifically not based on the Constitution). There is no similar standing order in this jurisdiction.

*United States v. Beckford*, 962 F. Supp. 804 (E.D. Va. 1997), another case relied upon

by Defendants, was in a different posture than this case because the government had already notified those defendants that prosecutors had been authorized to seek the death penalty. After that notice, the defendants sought discovery concerning mitigating factors for use at sentencing. In that context, the Eastern District of Virginia held that "defendants need only establish a substantial basis for claiming that a mitigating factor will apply at the penalty phase, in order to invoke the Government's obligation under *Brady* and its progeny to produce any evidence which is material to that mitigating factor." *Id.* 962 F. Supp. at 811 (citation and internal quotation marks omitted).

Even though some courts have ordered pre-authorization disclosure, the Court agrees that *Brady* disclosure is a *trial* right. "The principle supporting *Brady* was avoidance of an unfair trial to the accused. That concern is not implicated at the plea stage . . . ." *United States v. Ruiz*, 536 U.S. 621, 634 (2002) (Thomas, J., concurring in judgment) (citation and internal quotation marks omitted). "The Supreme Court has never established a specific amount of time before trial when a *Brady* disclosure regarding witnesses must be made," so long as it is made in time for the defense to prepare and present its case effectively. *United States v. Edelin*, 138 F. Supp. 2d 23, 31 (D.D.C. 2001).

The timing of production pursuant to that trial right must be weighed in light of concerns for witness safety. "[T]he interests of justice would not be served by premature release of information that could compromise the security and safety of witnesses and informants who have been cooperating with law enforcement." *Edelin*, 138 F. Supp. 2d at 31. In *United States v. Martinez-Martinez*, Crim. No. 01-307, 2001 WL 1287040, (S.D.N.Y. Oct. 24, 2001), for example, the defendants sought pre-authorization disclosure. The government did not have *Brady* material but did possess *Giglio* material. Explaining that "district courts have the authority to determine, as

a matter of sound case management, when the Government shall disclose *Brady* and *Giglio* material," the court did not order immediate production of the *Giglio* material but instead ordered its production 14 days before trial. 2001 WL 1287040, at *5. Further, the court denied the defendants' request for the names of potential witnesses. *Id*. at * 7. Likewise, the district court in *Frank* refused to compel early production of a prosecutor's entire witness list because of concerns for the safety of certain witnesses. That court noted:

> As a general matter, a defendant has no constitutional right to receive either *Brady* or *Giglio* material prior to trial. As the Supreme Court observed in *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), "[t]here is no general constitutional right to discovery in a criminal case and *Brady* did not create one . . . ." Exculpatory material must be disclosed, however, in sufficient time to permit a defendant to make effective use of it *at trial*, thus potentially necessitating pre-trial disclosure, depending on the nature of the material.

*Frank*, 11 F. Supp. 2d at 324 (citations omitted) (emphasis added).

Protecting witnesses from harm is the norm, not the exception. As explained above, the *Delatorre* court did not require the government to produce *Brady* material related to witnesses at risk or material that would identify witnesses for the prosecution. 438 F. Supp. 2d at 902. In *Edelin*, the court delayed both the identification of prosecution witnesses and impeaching material related to such witnesses until a few days before their trial testimony, due to allegations that defendants had harassed and intimidated potential witnesses:

> The willingness of the defendants to harass and intimidate witnesses, and the willingness of the defendants to interfere with the judicial process led to the decision of this Court to not produce the names of witnesses until the Thursday before they testify in the upcoming trial. The same analysis supports the delay in disclosing impeaching information against those witnesses.

128 F. Supp. 2d at 33–34. The timing of the release of *Brady* material may also be constrained by

the need to complete related investigations. The *Feliciano* court, for instance, did not require the government to produce discovery relating to equally culpable defendants because such disclosure would imperil current investigations. 998 F. Supp. 2d at 171.

Defendants argue that "[p]re-authorization *Brady* disclosures appear to be the practice in this District." Mot. to Compel at 7 (citing *United States v. Karake*, 281 F. Supp. 2d 302 (D.D.C. 2003); *United States v. Long*, Crim. No. 10-171 (D.D.C.)). The Court is not aware of any such common practice in this district. Moreover, Defendants' argument exaggerates the cases. *Karake* was *sui generis*, involving defendants who were Rwandan Hutus charged with murdering American tourists in Uganda. The case was filled with unique obstacles that confronted defense counsel who represented non-English-speaking foreigners charged with committing capital offenses over six years previously in Uganda. *Karake*, 281 F. Supp. 2d at 305. The government did not, in fact, contest the application of *Brady* in that context, even as it read its requirements more narrowly than the Court. *Id.* at 305–06. *Karake* does not assist here, where the government fully contests the motion to compel. In *United States v. Long*, counsel for all parties reached their own disclosure agreements and the Judge did not order any particular disclosures; it too, therefore, is not of assistance to Defendants in this case.

In sum, one plain principle runs through the cases: a criminal defendant's discovery rights — even a defendant facing the possibility of a death sentence — are constrained when there are realistic fears for the safety of witnesses. The Court finds such a realistic fear present in this matter. In 2006, Crystal Washington allegedly permitted Mr. Pray and his associates to use her home as a "stash house" for their alleged narcotics conspiracy. Superseding Indictment, Count 1 ¶ 1, at 8. Apparently, her home was later searched by police, who recovered narcotics and weapons. *Id.*,

Count 1 ¶ 12, at 9. Three years after that search, Mr. Pray and an unidentified individual allegedly discussed their certainty that Ms. Washington would be appearing as a witness at their narcotics trial in the Superior Court of the District of Columbia. *Id.*, Count 1 ¶ 13, at 10. As a result of that conversation and on the eve of Mr. Pray's trial, Mr. Marlow is alleged to have murdered Ms. Washington in order to prevent her from testifying. *Id.*, Count 1 ¶ 15, at 9. The plan was successful. Three days after Ms. Washington's murder, the government was forced to announce that it was unable to proceed with the Superior Court trial due to the murder of an essential witness, to the obvious benefit of Mr. Pray. *Id.*, Count 1 ¶ 16, at 10.

The Superseding Indictment also charges Messrs. Pray and Marlow with the murder of Jheryl Hodge in broad daylight in the Barry Farm neighborhood in the District of Columbia. The Superseding Indictment alleges that: (1) following this murder, an unidentified individual reported to Mr. Pray that there were possible witnesses to the murder; (2) soon thereafter, Mr. Pray expressed frustration to Mr. Marlow about the public nature of the killing; (3) a few days later, Mr. Pray asked Mr. Marlow whether he had disposed of the weapon used to kill Mr. Hodge. *Id.*, Count 1 ¶¶ 60-62, at 17-18. Three weeks later and still worried, Mr. Pray allegedly participated in a conversation where he discussed the idea of starting a rumor that Mr. Hodge's murder was perpetrated by a deceased individual in order to take suspicion off Mr. Marlow. *Id.*, Count 1 ¶ 89, at 23.

The Court also is aware that a relatively minor player caught up in this situation fears serious and imminent jeopardy to himself and his family members if his involvement were to become known. Given the allegations in this case, that fear is reasonable.

Trial for these Defendants has not been scheduled, but it will be no sooner than 2012 because non-death-eligible co-defendants will be tried first. There is a long time between now and

then and, if the allegations of violent actions have merit, there would be plenty of time to injure or kill witnesses. Quite frankly, that is a risk the Court is unwilling to take.

### III.  CONCLUSION

The motion to compel pre-authorization disclosure of exculpatory evidence filed by Messrs. Pray, Benbow, and Marlow [Dkt. # 115] will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: February 17, 2011                                     /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge